Next case this morning is 22-1387 Cuervo v. Sorenson, counsel for appellant. If you would make your appearance and proceed, please. Good morning, Your Honor. My name is Sean McDermott. I am the attorney for appellant Patricia Cuervo. May it please the court. Your Honor, the question today is whether the case that Ms. Cuervo gave and presented to the district court should have been dismissed at the 12B6 stage, at the pleading stage. Respectfully, the district court made an error and prematurely dismissed Ms. Cuervo's cause of Ms. Cuervo pled facts as specifically and precisely as she could. She did this to the best of her ability with the information that she had at the time. Ms. Cuervo asserted that law enforcement came to her home as they were searching for a snowcat that had been stolen, not by her, and the facts that we have in the case up to this point illustrate that Ms. Cuervo was not at home at the residence. The omission of facts indicate that Ms. Cuervo was unaware that her son had allegedly and apparently stolen a snowcat and that that snowcat was most likely in her garage, not put there by her. Every fact that we have is that she had no knowledge that any of this occurred. Do you argue on appeal that there was anything improper about the district court's consideration of the warrant affidavit in making its motion to dismiss determination? That and the after action report. Well, you focus on the after action report. I didn't see any briefing on the warrant affidavit. Well, that's a very good question. I'm going to pause for just a moment while I do my best to answer that. I did focus on the after action report primarily because it's purely a hearsay report and while the affidavit relies on out-of-court statements, it at least is made under oath. I would also note that at the bottom of the affidavit, Officer Salazar indicates that there's water coming in from the garage and it's just further indication and evidence that this snowcat was in the garage and not in the living quarters of the residence. And from my perspective, it frankly supports the fact that the only place that the officer should have been searching was there in the garage and going ahead and firing tear gas and chemical munitions into the residence and doing approximately $50,000 of damage was unreasonable and it was an unreasonable execution of the warrant. The warrant affidavit also describes a toolbox and the toolbox could be in the residence, correct? I respectfully, it couldn't. It could or couldn't? It could not. You can't take the toolbox off of the snowcat? My understanding is you cannot, Your Honor. Is there any, I mean, I guess we're dealing with a complaint here. Did you make any allegations that the toolbox couldn't be removed from the in one of our responses in that appendix page 298 and 299, we did show the court that this is in fact a huge toolbox that is affixed and is part of the snowcat and therefore it could not be in the residence and our position also was is that if you just read the plain language of the actual search warrant that when you read that it essentially says the same thing and this parsing out of could it possibly be a smaller toolbox is frankly kind of a, lack of a better term, a stretch and kind of a justification for going somewhere where they inside a house. It doesn't have to be small. I think the, I think the photograph frankly speaks for itself and I think it shows that this is a part of the snowcat and it is implausible that it would be in the house and the question frankly kind of brings me to my next point. If this is the way the evidence comes out, once evidence actually begins to be taken, then that's a very fair point to make in a Rule 56 motion and if the evidence came out that way and the evidence came out that hey, there was a justification for a protective sweep, then we're likely not standing here. We likely don't prevail but at the Rule 12b6 stage where we're making our allegations and we're simply saying these are our allegations on its face. We have plausibly pled a Fourth Amendment violation that was clearly established at the time we should be permitted to move forward, to take depositions, to do discovery and then see where we're at and respectfully, the district court did not permit us to do that. Focusing on the clearly established law question as it relates to the protective sweep. Again, I just have a question of focus of argument. I didn't see any real discussion about that in your public briefing. I mean the focus appeared to be on the chemical munitions and their impact but nothing on the protective sweep and how you are showing that there would have been clearly established law being violated by their entry there to do a protective sweep. Did I miss it? Where is it? You did not miss it, and you didn't miss it because that was taken from the after action report and I want to emphasize the after action report was attached in one of our pleadings when we were trying to let the court know we're pleading this as precisely as we can. There was an open records request. This is all of the information that we were given and we are being as precise as we possibly can. We can't just start to make facts up. Nobody would want us to do that and that was the purpose for the report to come in. The report was not intended to be offered for the truth of the matter or as evidence or anything like that. That's the sole purpose of the report and I would note... Did your briefing say that? Did you say that to the district court? We're presenting it for this reason only and we do not want you to consider it for any other reason. I mean because otherwise if you present the district court a document as part of one of your pleadings, doesn't that indicate to them that it's something you want to have considered? I mean I think the district court said it was considering it because you attached it. The court did say that but I think given the context of our pleadings I don't think the district court should have received it that way and if I could have or maybe I should have more artfully let the court know that it definitely shouldn't be received that way. In one of our initial pleadings, because this did go through a couple of rounds, I had requested that it be converted to a Rule 56 motion and that some affidavits and or discovery be permitted to be taken. That did not occur. As a backdrop for this, a lot of the pleading was happening during the pandemic when things weren't quite moving the way you would normally expect them to move. That report's not attached to the complaint though, correct? No, no I didn't attach that to the complaint. And you don't even refer to it by name in the complaint. You just say that some of the reports didn't have detail in them, correct? Correct. And your position is that the report isn't factually accurate? Yes, that is my position and parenthetically I will, I don't think this is in the record but as I'm answering questions, I will let you know that during this case we voluntarily dismissed a number of defendants. One of the defendants that we ended up dismissing, we dismissed that defendant because that person was erroneously put in the report. They actually were not even there. Right, well and your point with respect to the report, because we really can't consider stuff not in the record, that's why I'm diverting you, is that that report is the only source for them to believe that there was someone armed in the house, is that correct? The affidavit doesn't do that. Correct. Okay and your complaint says that they had some heat sensing device that told them that the only living being in the house was a dog. Yes. Did I read that correctly? Our complaint does say that. So it looks to me like it hinges pretty closely on whether or not the district court could properly consider that report, the post-investigation report. I think it's the Grand Junction Police Department report. I do think that that's very fair and I will note the district court did essentially make that the cornerstone for the reason that they did dismiss the case. And I will note that the district court cited a number of cases when they were talking about a protective sweep. All of those cases that the district court cited are cases that are in fact criminal cases and they were done in the context of whether a search was proper or not. I mean that's what this is. I mean they've got to determine if all the actions on serving the warrant were proper. I mean done in that context. The point I'm about to make is once again it would be very proper in the rule 56 context. In all of those cases the district court cited those litigants had their opportunity to go to court, to have evidence presented, to have testimony taken, to have the facts developed. Our facts in this case have not yet been developed. Respectfully the district court erred. Respectfully we're asking this to go back to the district court so that the facts can be developed and so a proper outcome whether it's for Ms. Cuervo or whether it's for the defendants can occur but it should occur after the facts are developed. There are two questions. One relates to the Grand Junction report. There is a reference to reports in the complaint. Now it's not explicit but it references the reports in the context of making a substantive point and then you subsequently include the report yourself. I'm talking about now just the propriety question of whether the district court had a right to consider them. You're the one who introduced stuff that was outside the complaint. I mean to the extent and you reference something in the complaint itself you use the word reports. So why is the district court, why was it improper for the court to consider that? I think it's improper for the court to consider it for the truth of the matter and to attach as much importance to it as the court did. I will say with respect to the complaint maybe that language should have been omitted. At the time that we submitted the report one of the things we had were the Monell claims that we did abandon on appeal but we were attempting to show the court why we were pleading so many things upon information and belief and the report was attached to give context to try and make the point, your honor, we're pleading this as precisely as we possibly can. This is the information I have. And speaking of abandoning, my second question and I just want to be clear on this, on the question of protective sweep and whether or not there was briefing in on this level regarding the any unconstitutionality associated with the protective sweep. My reading of the briefing was that was not the focus of your briefing and if in fact that's true and I thought I was trying to tease that out from asking you, if in fact that's true then you've waived any argument in that respect. Yes respectfully, your honor, I don't think the um an issue at this point. I think the court incorrectly made that an issue when it should not be. The only issue should be is is my complaint on its face sufficient, facially sufficient. Well facially sufficient to do what? I mean we're talking about constitutional violation clearly established. That's how that basically you if you have been prejudiced you've been by your ability to come forward and prove that it was a constitutional violation and it was clearly established. I guess what I'm trying to get to the core of is what is the action that would have been the subject of a constitutional violation. Your briefing focused on the chemical munitions and and basically all I'm asking is it seems to me that that's what we're talking about. Well fair enough. I that is that is what we're talking about. That's where all the damage came from. I'm not suggesting that the that they did that my client received additional damages that we can at least legally hold someone accountable for during the protective suite. Okay. I'm not alleging that. Okay. I'll allow a little bit of rebuttal time. Is this Lawmaster v. Ward case, do you view that as being your most factually similar case? It's the Tenth Circuit case that I found and it's the Tenth Circuit case that I included because I think that it sets a relatively all things considered low bar. I think a a gun being placed in a dog bowl and cigarette and cigar ashes being put in someone's bed during the compared to what we're alleging here pretty minimal and that is that and it being a Tenth Circuit case is the reason that I've attached it. I frankly could go do some more research and see if there's some other things following LaMaster that I have not included. Let me ask you another question. If the police had reasonably believed that the person who they thought stole the snow cat was one dangerous and two in the house, does it change your case? It changes my case and I understand you don't agree with those facts. Right and I would also add we get and I think the Tenth and the other case law in the brief talk about a fact-specific inquiry and I think it definitely changes the complexion of my case and then we definitely get into some additional facts to see what kind of case there really is, but we don't know yet. Thank you, Your Honor. Chief Judge Holmes, Your Honors, may it please the court. My name is Chris Brophy and along with Mr. Andrew Klaus, we represent the 17 Mesa defendants who are the appellants in this action. I mentioned the number 17 because our first argument out of the gate is the pleading against these individuals alleges no personal participation sufficient to state a 1983 claim. Let me take you up on that one. You know we get complaints all the time that that don't allege personal participation. This complaint's a little different in that it alleges every bad act as against every defendant. So if you look at the complaint it says all 17 defendants did this, all 17 did this, all 17. I mean don't we have to take that as true at this stage? At some point it crosses the line from being an acceptable allegation to being a conclusory pleading and we have to look at it in the context and I think I would answer your question in this way. If these 17 defendants were dismissed and this was replayed as a John Doe type complaint, officers 1 through 10 did the following things. If we get past that hurdle we then look at okay what is it that's being alleged here to have occurred and does it actually state a constitutional violation? So I think with respect to these 17 individuals I think the allegation that they were present and they aided and abetted the firing munitions it's that's... I read it's not that it's embedded it says all 17 defendants fired munitions at the house, all 17 defendants entered the house illegally, all 17 defendants. I mean so it's a little it's a little different than a lot of them that we see. I agree but it's also a little different than than exactly that. It's all 17 defendants participated in the unlawful search of the house, all 17 defendants fired munitions or all 17 defendants aided and abetted in firing the munitions. It's not at all clear that that it's they each one of them did all of those things. And why would they why would it need to be? I mean to the point this is not the the classic collective attribution situation where you say defendants did this, defendants did that. In this situation essentially they're saying they were all there and if they didn't do it personally they aided and abetted it and leave it to discovery to tell us what exactly they did. Why isn't that a reasonable way to deal with a limited font of information that you have? Well because it disregards a lot of the information that happened. There weren't 17 munitions for example fired into the various parts of the house. There's no facts to support that all 17 of these Well why do they aided and abetted doesn't require that they had that they did enter the house. It doesn't require that they actually fired. If they were there lending support and they were participating in this activity why wouldn't that be enough? Because your honor I think that crosses too far into the lines they were simply present and it becomes then a vicarious type liability situation which isn't permissible under 1983. I now become vicariously liable because some other jurisdiction in some other part of the property did something and I think that I think that expands the personal participation part of 1983 far more than it should. But like I said even if we were to allow that to be an acceptable allegation when we start digging into the facts and the circumstances of what happened here the plaintiff's allegations. So we're on a motion to dismiss? We are. So I mean you know in a motion summary judgment we can dig into the facts and circumstances but here we have to take the allegations of the complaint as true. We have to take the factual allegations as true. We don't have to take the conclusory allegations as true and I think what we've got are we have conclusory allegations that are belied by the documents that are actually in the record and were considered by by the district court. And when Judge Martinez found both the first time and the second time he reviewed this complaint there was a plethora of conclusory allegations that didn't sustain a 1983 claim against these officers under the circumstances of the facts as he understood them from the documents that were in the record. And I think if we can start. When you when you say that you consider the documents are you including the affidavit affidavit warrant as well as the post-incident um police report? I think we need to treat them separately. I think the the search warrant itself was quoted in the complaint. It makes it a crucial document and the affidavit in support of that search warrant is part of the search warrant. It's part of the reasoning that the court used in concluding that a search warrant there was probable cause to issue the search warrant. Let me let me hit the pause button there. The affidavit was not expressly incorporated by the warrant and so why would it necessarily be treated as part of the warrant? I mean we have plenty of cases that talk about incorporation and there wasn't such language incorporating the affidavit in this case. I believe the warrant itself refers to the affidavit. It refers to it but it doesn't say it's incorporating it. I mean it says that you said it says the lawyer submitted an affidavit. It says uh Devin and Salazar are having this state file an affidavit for a search warrant. Do you believe that language in itself is sufficient to incorporate the affidavit? I think if the question is whether or not the search warrant itself is valid then the question turns on whether or not there was supporting evidence supporting affidavit as required by the criminal rule 41 supporting the search warrant. So I don't think they're they're divisible. Well the question is not whether the search warrant is valid. The question here is what whether we can consider the affidavit in determining whether there were sufficient facts to allow what they would do to support the allegations of constitutional violation and and so the point is if it's not incorporated into the search warrant why was it proper to consider it? Well I think at my first level of response is as a rule 12 as this court is held the court can take judicial notice of public record that speaks to the the facts and circumstances at the rule 12 stage and in this case the affidavit is part of the public record as part of the support for the search warrant. For the truth of the matter asserted we can take judicial notice though? I don't know that you necessarily have to take it for the truth of the matter. Well I mean it doesn't do you a whole lot of good if we don't. I mean the only thing in that affidavit that seems to me most salient is the there was somebody in the house and they didn't come to the door and if that salient point is going to have any resonance we'd have to take the truth of the matter asserted wouldn't we? I don't think so your honor. I think yes I would appreciate it if you took it as the truth of matter certain because I think that is a crucial point but what's more important is when we start looking at what the search warrant itself says and in this case the search warrant covered the entire premises located at that address. When that search warrant was issued all of those things that we're talking about the snowcat, the toolbox, the presence of someone at the premises was known to the court when it issued the search warrant. Now whether or not that was correct whether or not that was true whether or not that warrant the affidavit itself was true that information was presented to the court. It's an operative act that rendered the probable cause for the court to issue the search warrant and it explains at least in part why given rule criminal rule 41 that the court was to limit the search warrant as much as possible why the court didn't limit it to for example the garage as the plaintiff argues. Well what I understood opposing counsel to be arguing about here focus on the chemical munitions and not the protective sweep and I mean I tried to as best I could nail that down so that's we're talking about the munitions here and what would be the justification for that and if you can't include the fact that that he was that somebody was in the house who didn't come to the house then you don't have anything you don't have it you don't have them having any knowledge that anyone is in that house you don't have any knowledge and even much less anyone in that house is a danger and they just shot in the munitions that's all you got right. To a certain extent that that would be correct if we were to ignore all of the record all the documents all the supporting documents the warrant everything else and we were simply to say these officers were there to pick up a snowcat then I think okay fair enough but we have to recognize there's no allegations in the complaint that say Mr. Cuervo wasn't in the house no one was in the house. Plaintiff's counsel said Ms. Cuervo wasn't in the house plaintiff says well after the munitions and everything else. They have to plead a negative you mean if I if somebody comes up to my house and has allegations to believe there's a snowcat there they can just start bombing the house just because they because there's no allegation there isn't anybody in the house? That's absolutely not what I'm saying your honor I think I think that's why we can't ignore the facts and circumstances that this was this hasn't been pled as a detached graduating that this was a single premises that these officers needed to secure they needed to perform the protective sweep. Judge Martinez correctly pointed out that the law does allow a protective sweep even without a warrant but in this case we've got a warrant that covers the premises so I think the the answer. You keep saying we've got the warrant affidavit that that allows for the munitions where in the warrant affidavit do you find language that tells you that there is a dangerous armed person in the house or they're suspected to be? It absolutely doesn't the warrant itself the search warrant itself does not. Or the warrant affidavit either one? The warrant affidavit does speak to someone being in the house. Does it say a dangerous person? It does not. That they you have reason to believe the person's armed and dangerous? It does not that comes from the Grand Junction after action report. Is it your position that anytime they try to serve a search warrant on a home and there's somebody inside that doesn't open the door they can then go immediately to the SWAT team and and munitions? No I don't think that's our position at all I think that there has to be the extenuating circumstances under the rubric of reasonableness but again at this at the pleading stage we need to come to a point where we recognize that the officers also have a right to ensure that the the area that they're that they're going to search pursuant to the warrant doesn't represent an unreasonable risk of harm to them. If you don't have information in the record that says there's a dangerous guy inside do you lose? No because the officers are still entitled to conduct a protective sweep. So okay I'll give you that but their protective sweep can be conducted by shooting canisters of tear gas and chemicals inside? Isn't that isn't that excessive you know per se in light of the fact that you don't have any evidence that there's anyone inside? Or that there's anyone dangerous inside? It as it turns out in this case there wasn't someone inside but I know that but I think it's a little bit much. I mean I'm giving you that maybe you thought someone was inside okay but you just didn't have any information that they were dangerous. I mean how far can we go if my grandmother's at my house and didn't come answer the door are you going to tear gas her? I mean if you if you don't know who's inside we're sweeping people up into that. I think I think it turns on the facts and circumstances of what position we are putting these officers in. We're asking them by everyone's admission they can go into the garage. The the exposure to harm by going into the garage leaving a vast majority of the premises unsecured I think is the exact idea of where a protective sweep should come from. I'm giving you that so just I'm just quarreling with your manner of protective sweep. I understand and this is this is not a situation where an officer suddenly decided let's just fire munitions in. No I agree but right but we got to live with what's in the pleading and what was properly considered by the district court and if that after action report wasn't properly considered you've got problems. Well and we're also bound by Bui, Bui the Supreme Court case. Yes. You have to have articulate articulable facts which reasonably prudent officer would believe that there is a pose of individual posing a danger in the area and so individual isn't enough. It's an individual posing judge Carson's grandmother probably isn't enough. And it's that's absolutely a fair point and I think your honors are correct. If we if we narrow this down to simply being able to say that they shot munitions into my house and and they shouldn't have because they should have only gone into the garage. Remember that's part of this argument here is that they had no business going anywhere else in the house. The the munitions part of that. They're not they're two different issues okay. They might have had absolute right to go into the house. Let's say we think the toolbox could have been lifted off and taken in the house. Right. But that doesn't mean they can go in by firing a bunch of munitions and a SWAT team. You know there's can you enter and then there's how you enter. Well I agree but if we're if we're going to reach the conclusion that they're allowed to go into the house they've got to be able to do so in a manner that doesn't unnecessarily or unreasonably place them at risk. So in any entry they can shoot tear gas into the house before they go in. I don't think it's as straightforward as simply saying I want to go into this house let's shoot some munitions. Okay but that's the that's the that's the that's the end game in your argument because they if they don't and I guess we're going back to considering whether they consider the after-action report because if they couldn't you don't have anything to suggest there's a perhaps. Well a person who is not responding to a request to identify themselves request to come out in an area where the officers are about to put themselves in danger and go into. So it's not simply they walked into the house and said I guess we're entitled to go in there let's knock down let's kick down the doors and shoot munitions in and then let's go in. They they you've got to consider the circumstances what happened here and it becomes a question of how much do we disregard. It's not a meth lab. I mean it's a stolen snowcat and if you not opening the door I suggest under supreme court authority isn't enough alone to have an armed assault on the house. I don't think it was just not now entering the door. I think that once SWAT was involved the house was surrounded and there were loud hails and all the rest of that. The question still becomes at what point do we disregard the public documents the public records and the information that the plaintiff himself. I see my time as if I could be indulged to finish my thought. Yes. How much are we going to ignore the fact that the plaintiff himself put this grand junction after action report in that answers all of these questions and doesn't leave us in a scenario that says well hey we just went into grandpa's house and blew it up because we felt like doing it. The court's well aware the qualified immunity argument is protecting everybody but the purely incompetent intentionally violative. I don't think under the qualified immunity the arguments that we've made and particularly what Judge Martinez found here that we have crossed a threshold at this at the pleading stage where we have where plaintiff has stated a plausible versus a possible section 1983 violation. If you're honest you have any other questions. Thank you your honors. Was there any rebuttal time? All right you have a minute if you want it. Thank you your honor. I respectfully I hope that I finally have explained why the report was put in there in the first place. It was not offered for the truth of the matter. I sincerely was trying to explain to the court why the case was pled the way it was and we're trying to make the point that had we been given more records under our request we could have pled it more precisely. We were doing the best we could and that's all it was intended to show. Do you do you concede that a I don't know. I honestly I can't answer that because I I mean you don't make an argument about a protective sweep in your brief. So I mean there's some contention at least that you've waived the opportunity to say they couldn't do one. So now we're talking about degree. I mean if they genuinely thought someone was in there perhaps but there's by understanding from their report is after all was said and done nobody was there. And that's that's hindsight reasoning. I'm aware of that but that's kind of my point is this thing's taken on a life of its own and and we don't know what the facts are. It's not a court statement and I just want the facts to get developed. Thank you counsel. Thank you. Case is submitted.